1   Michael F. Ram (SBN 104805)
    mram@forthepeople.com
2   Marie N. Appel (SBN 187483)
3   mappel@forthepeople.com
    MORGAN & MORGAN
4   COMPLEX LITIGATION GROUP
5   711 Van Ness Avenue, Suite 500
    San Francisco, CA 94102
6   Telephone: (415) 358-6913
7   Facsimile: (415) 358-6923

8   [Additional Counsel Appear on Signature Page]

9   *Attorneys for Plaintiff and the Proposed Classes*

10

11              **IN THE UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13

| | |
|---|---|
| 14  CHRISTOPHER RASH, on behalf of himself and all others similarly situated, | CASE NO. 5:21-cv-00998-JWH-SP |
| 16 | PLAINTIFF'S MOTION  FOR CLASS CERTIFICATION |
| 17              Plaintiff, | Hearing Date: November 19, 2021 |
| 18       v. | Time: 9:00 a.m. Location: Courtroom 2 |
| 19 | |
| 20  TELEBRANDS CORPORATION, | Hon. John W. Holcomb |
| 21 | |
| 22              Defendant. | |

23

24

25

26

27

TO:   THE CLERK OF THE COURT; and

TO:   DEFENDANT TELEBRANDS CORPORATION AND ITS
        ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 19, 2021, at 9:00 a.m., in Courtroom 2, of the U.S. District Court for the Central District of California, George E. Brown, Jr. Federal Building and United States Courthouse, 3470 12th St., Riverside, CA 92501. Plaintiff will move for class certification.  This motion will be made on the grounds that the prerequisites of Rule 23(a)—numerosity, commonality, typicality and adequacy—are satisfied, as are the requirements of Rule 23(b)(3), as questions of law and fact common to the class predominate over any questions affecting individual members and use of the class action device is superior to a multitude of individual actions.

The motion is based on this Notice of Motion; the following Memorandum of Points and Authorities; the accompanying declaration of Christopher Rash and Michael F. Ram; the records and file in this action; and on such other matters as may be presented before or at the hearing of the motion.

1
2

# TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES .................................................................. ii

I.   INTRODUCTION ..................................................................... ii

II.   ISSUE TO BE DECIDED ...............................................................3

III.   FACTUAL BACKGROUND ...........................................................3

  A.   Plaintiff Rash's Factual Allegations .........................................3

  B.   Telebrands and the Silver Bullet Hose .......................................6

  C.   Defendant's Knowledge of and Notice of the Defects. ...............7

  D.   Telebrands' Actions Have Injured Plaintiff and the Class. ...........9

IV.   CLASS CERTIFICATION SHOULD BE GRANTED ............................10

  A.   The Rule 23(a) requirements are satisfied. ................................10

    1.   The classes are so numerous that joinder is impracticable. Rule 23 (a)(1). ...............................................................................10

    2.   There are issues of law and fact common to all class members. Rule 23 (a)(2). ......................................................................11

    3.   Plaintiff's claims are typical of class members' claims. Rule 23 (a)(3). ...............................................................................12

    4.   Plaintiff will adequately represent the classes. Rule 23 (a)(4). ............12

  B.   The Rule 23(b)(3) requirements are satisfied. ...........................13

    1.   Common issues predominate over any individual issues. ...................14

      a.   Common issues predominate with respect to the CLRA and UCL. ....15

      b.   Common issues predominate with respect to implied warranty and unjust enrichment. ......................................................................19

    2.   Class certification is superior to individual actions. ............................20

V.   CONCLUSION .......................................................................21

---

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Alex Arreguin Jr. v. Telebrands*, Case No. CIVRS1307798, Sup. Ct. of Cal. (San Bernadino

4

County) ................................................................................................................ 8

5

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .......................................... 14

6

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013) ................. 15

7

*Bibo v. Fed. Express, Inc.*, No. C 07-2505 TEH, 2009 WL 1068880 (N.D. Cal. Apr. 21, 2009)

8

.......................................................................................................................... 21

9

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) .............................. 16

10

*Butler v. Sears, Roebuck & Co.*, 727 F.3d 796 (7th Cir. 2013) ............................... 15

11

*Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663 (2006) ..................... 19

12

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ................................................... 19

13

*Edwards v. Ford Motor Co.*, 603 Fed. App'x 538 (9th Cir. 2015) ........................... 17

14

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ......................... 11, 12

15

*Erica P. John Fund, Inc. v. Halliburton*, 131 S. Ct. 2179 (2011) ............................ 15

16

*Gaudin v. Saxon Mortg. Serv., Inc.*, 297 F.R.D. 417 (N.D. Cal. 2013) .................... 18

17

*Gold v. Lumber Liquidators, Inc.*, No. 3:14-cv-05373-TEH, 2015 WL 7888906 (N.D. Cal. Nov.

18

30, 2015) ................................................................................................ 16, 17, 18

19

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................................. 12, 13

20

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ................................ 12

21

*In re Morning Song Bird Food Litig.*, 320 F.R.D. 540 (S.D. Cal. 2017) ..................... 19

22

*In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145 (2010) .......................... 17

23

*In re Tobacco Cases II,* 240 Cal. App. 4th 779 Cal. Rptr. 3d 881 (2015) .................... 19

24

*In re Tobacco II Cases*, 46 Cal.4th 298 (2009) .................................................... 18

25

*In re Vioxx Class Cases*, 180 Cal. App. 4th 116 (2009) ........................................ 16

26

*Inocencio v. Telebrands Corp.*, L-4378-16, Sup. Ct. of N.J. (Bergen County) ............ 8

27

*Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504 (C.D. Cal. June 12, 2012) .......... 17, 20

*Keilholtz v. Lennox Hearth Prod. Inc.*, 268 F.R.D. 330 (N.D. Cal. 2010) .................................. 20

*Klemballa v. Telebrands Corp.,* 14-cv-01245 (D.N.J.) ............................................. 9

*LiMandri v. Judkins*, 52 Cal. App. 4th 326 (1997)...................................................... 16

*McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174 (2010) ........................................... 17

*Norcia v. Samsung Telecomm. Am., LLC*, No. 14-cv-00582-JD, 2015 WL 4967247 (N.D. Cal.
   Aug. 20, 2015)............................................................................................... 16

*Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015)............................... 18

*Rannis v. Recchia*, 380 Fed. App'x 646 (9th Cir. 2010) ........................................... 11

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010).................................................. 12

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012) ........................... 20

*Telebrands. Perryman v. Litton Loan Serv., LP*, 81 F. Supp. 3d 893 (N.D. Cal. 2015) ........... 18

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ........................................ 14

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)................................................ 12

*Westway World Travel, Inc. v. AMR Corp*., 218 F.R.D. 223 (C.D.Cal.2003)........................... 21

*Wilson v. Metals USA, Inc.*, No. 2:12-cv-005680-KJM-CJD (E.D. Cal. July 5, 2016) ........... 15

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) ....................... 12, 21

*Wolph v. Acer Am. Corp.*, 272 F.R.D. 477 (N.D. Cal. 2011) ...................................... 18

**Statutes and Regulations**

Cal. Bus. & Prof. Code § 17200 ........................................................................ 20

Cal. Bus. & Prof. Code § 17203 ........................................................................ 21

Cal. Civ. Code § 1770(a) ................................................................................ 18

Cal. Civ. Code § 1780 ................................................................................... 21

Cal. Civ. Code § 1780(a) ................................................................................ 19

Cal. Civ. Code § 1782(d)................................................................................. 22

Cal. Civ. Code §1791.1(a)................................................................................ 22

**Rules**

Fed. R. Civ. P. 23 (a)(2) ........................................................................................ 14

Fed. R. Civ. P. 23(a) ....................................................................................... 4, 5, 13

Fed. R. Civ. P. 23(b)(3) .......................................................................... 5, 13, 16, 18

Fed. R. Civ. P. 23(b)(3). ...................................................................................... 23

Fed. R. Civ. P. 23(g)(1)(A) ................................................................................. 16

Fed. R. Civ. P. 23(a)(4) ....................................................................................... 15

## I.   INTRODUCTION

Telebrands designs and develops, advertises, sells, and distributes expandable Silver Bullet™ garden water hoses (the "Silver Bullet Hose") throughout California.  Expandable garden water hoses like the Silver Bullet are designed to grow into a full-sized hose when in use and then shrink back to an original compact size when dry and after the first use.  Defendant advertises the Silver Bullet Hoses as being reliable alternatives to conventional rubber garden hoses.

In approximately June 2019, Plaintiff Christopher Rash, a fire fighter, viewed a television infomercial for the Silver Bullet Hose, which touted its qualities, including that it had a "DURABLE OUTER SHELL: Pocket Hose Silver Bullet's exclusive Bullet Shell outer casing won't snag, tear, or wear; inner tubing is kink-proof,"[1] and led Mr. Rash to believe that it would be long lasting and durable. In reliance on the representations in the informercial, Plaintiff Rash purchased a 25-foot Silver Bullet Hose for approximately $19.99 on Amazon.com. Mr. Rash believes the hose he purchased lasted for approximately four (4) weeks before fraying, wearing out, developing pin-holes, and leaking. Mr. Rash estimates that he used the hose fewer than 10 times.

Mr. Rash attempted to return the Silver Bullet Hose via Amazon but was not permitted to do so, and his attempt to return the product to the Amazon merchant, Purple Cow CSJ, LLC d/b/a Bulbhead the Home of Bright Ideas ("Bulbhead"), were unsuccessful as well.

Telebrands knowingly and intentionally concealed that Silver Bullet Hoses fail and leak when promoting its product on its website and in advertisements. Defendant has ignored customers' complaints and concerns and has failed to

---

[1] https://www.amazon.com/Pocket-Hose-Original-Silver-BulbHead/dp/B07JCD8TG7 (last accessed September 30, 2021).

1    implement any changes to the Silver Bullet Hose to remedy the product defect.

2         Plaintiff moves for class certification of a class of individuals defined as:

3    ALL individuals and entities in California who purchased the Silver Bullet Hose,

4    not directly from Defendant, from June 2017 to the present. The proposed class

5    satisfies the numerosity, commonality, typicality, and adequacy requirements of

6    Rule 23(a).  The class has far more than 40 class members, the minimum number

7    required by the Ninth Circuit to satisfy the numerosity requirement. Common

8    questions of law and fact include whether the Silver Bullet Hose is defective,

9    whether Telebrands knew of the defect, and whether Telebrands omitted to

10   disclose the defect to class members. Plaintiff and class members are all subject

11   to the same conduct by Telebrands, satisfying the typicality requirement. The

12   adequacy requirement is also satisfied because Plaintiff has no conflict with other

13   class members, has retained experienced counsel, and is diligently pursuing class

14   members' claims.

15        The requirements of Rule 23(b)(3) are satisfied because there are numerous

16   questions of law and fact common to all members of the class that predominate

17   over any individualized issues. These common issues—the existence of a defect,

18   Telebrands' knowledge of the defect, and Telebrands' scheme to sell the Product

19   without disclosing the defect—predominate over any individualized issues that

20   courts recognize may be addressed in later proceedings. Granting class

21   certification is superior to a multitude of individual actions or, more likely, many

22   class members abandoning their claims and receiving no adequate relief, as it will

23   allow the claims of  thousands of class members to be resolved in one fair and

24   efficient proceeding, that includes injunctive as well as monetary relief.

25        Because the proposed classes satisfy the requirements of Rule 23, Plaintiff

26   respectfully requests that the Court grant his motion for class certification,

27   appoint Plaintiff as class representative, and appoint the undersigned law firms as

class counsel.

## II.    ISSUE TO BE DECIDED

Whether Plaintiff's claims satisfy the requirements for class certification under Federal Rule of Civil Procedure 23(a) and 23(b)(3).

## III.    FACTUAL BACKGROUND

### A.    Plaintiff Rash's Factual Allegations

In approximately June 2019, Plaintiff Rash viewed a television infomercial for the Silver Bullet Hose, which touted its qualities, including that it had a "DURABLE OUTER SHELL: Pocket Hose Silver Bullet's exclusive Bullet Shell outer casing won't snag, tear, or wear; inner tubing is kink-proof,"[2] and led Mr. Rash to believe that it would be long lasting and durable. In reliance on the representations in the infomercial, Plaintiff Rash purchased a 25-foot Silver Bullet Hose for approximately $19.99 on Amazon.com. Mr. Rash believes the hose he purchased lasted for approximately four (4) weeks before fraying, wearing out, developing pin-holes, and leaking.  Mr. Rash estimates that he used the hose fewer than 10 times.  Doc No. 1 Class Action Complaint ("Complaint") (ECF 1), ¶ 15.

Mr. Rash then attempted to return the Silver Bullet Hose via Amazon but was not permitted to do so. Instead, he was directed to the product's manufacturer, "Bulbhead." According to Amazon's website, Bulbhead is the exclusive reseller of products from Telebrands and Bulbhead.[3] *Id.* ¶ 16.  Mr. Rash then attempted to return the Silver Bullet Hose to Bulbhead, but Bulbhead made it

---

[2] https://www.amazon.com/Pocket-Hose-Original-Silver-BulbHead/dp/B07JCD8TG7 (last accessed September 30, 2021).

[3] https://www.amazon.com/sp?_encoding=UTF8&asin=&isAmazonFulfilled=1&isCBA=&marketplaceID=ATVPDKIKX0DER&orderID=&protocol=current&seller=A313TAOOW7I8GZ&sshmPath= (last accessed September 30, 2021).

so difficult and burdensome that he ultimately gave up. *Id.* ¶ 17.

On July 18, 2019, disappointed by Defendant's failure to address or remedy the defects and problems with his Silver Bullet Hose, Mr. Rash posted the following complaint and two photos (showing the pin hole leaking) on Amazon's website:

Customer Review



Chris Rash

*1.0 out of 5 stars* The single jacket covering the rubber hose wears easily causing rubber hose to burst
Reviewed in the United States on July 18, 2019
Color: 75 Feet
As a firefighter, I was curious to see how this hose performed. I purchased a 25' hose and used it for four (4) weeks. During that time, I used the hose twice a week to hose down my patio and walkways. The hose worked well. However, I noticed that the single jacket sheath that is wrapped around the interior rubber hose, easily began to fray while being drug across the concrete, causing the interior rubber hose to be exposed and burst. The nozzle worked well at first, but after each use, the effectiveness of the stream became less and less, to where it could not maintain a consistent straight stream. This is hose is a great idea, but the outer sheath needs to be double jacketed and the nozzle needs improvement.

*Id.* ¶ 18.

1    As described in the review and shown in the photos below, Mr. Rash's

2    Silver Bullet Hose frayed and developed pin-holes, which rendered it useless.





*Id.* ¶ 19.

Mr. Rash would not have purchased the Silver Bullet Hose had Defendant

disclosed the propensity for the Silver Bullet to fail. Defendant represents that

Silver Bullet Hoses contain a "DURABLE OUTER SHELL" and that "Silver

Bullet's™ exclusive Bullet Shell outer casing won't snag, tear, or wear."[4]  *Id* ¶

---

[4] https://www.amazon.com/Pocket-Hose-Original-Silver-BulbHead/dp/B07JCD8TG7;

20.

**B.     Telebrands and the Silver Bullet Hose**

Telebrands, the original creator of the "As Seen On TV" logo, is one of the oldest and most recognized companies in the direct response television marketing industry ("DRTV").  DRTV employs aggressive marketing campaigns designed to generate an immediate response from consumers in the form of sales or product orders.  With DRTV campaigns, the viewer's response is directly with the marketer, in this case Telebrands. *Id.* ¶ 21.

The "As Seen On TV" advertisement for the Silver Bullet Hoses claims the hose will not "tear or burst."  *Id.* ¶ 22.

On websites promoting the Silver Bullet Hose[5] (the "Silver Bullet Website") the product is described as "hassle free," "making other hoses obsolete," and having an outer casing that is "resistant" to "tearing and wearing." *Id.* ¶ 23.

In addition, the Silver Bullet Website boasts:

> Things that used to be big and bulky now fit in your pocket -
> even your hose! From the makers of the #1 expandable hose in
> the world comes another amazing Pocket Hose®, the Pocket
> Hose® Silver Bullet™. The new Silver Bullet™ is the hassle-
> free hose. Just turn on the water and watch the Silver Bullet™
> grow from pocket size to supersize. It's the hands-free hose that
> grows! Then, when you're finished, just turn off the water and
> Silver Bullet™ shrinks to a super-light Pocket Hose® again.
> Pocket Hose® Silver Bullet™ stores easily and is perfect for
> boats and RVs. **The exclusive Bullet Shell outer casing won't**

---

*see also* https://mypockethosesilverBullet.com/?ref=mypockethosesilverBullet.com
(both last accessed September 30, 2021).

[5] https://mypockethosesilverBullet.com/?ref=mypockethosesilverBullet.com (last accessed September 30, 2021).

**snag, tear, or wear.**[6]  *Id.* ¶ 24 (emphasis added).

The Silver Bullet Website claims, "Over 100 Million Satisfied Customers," "100% Percent Satisfaction Guaranteed," and "Easy Returns."  The Website prominently claims "100% Satisfaction Guarantee."[7]  *Id.* ¶ 25.

Silver Bullet Hoses are marketed and sold for use as a reliable water hose. Yet, Defendant has concealed from and/or failed to disclose to Plaintiff and members of the Classes the defective nature of the Silver Bullet Hoses, which shortly after the first use are prone to tears, pin-holes, and leaks.  *Id* ¶ 26.

Defendant has used and continues to use a variety of methods to communicate representations about the durability and quality of the Silver Bullet Hose to the general public.  These uniform representations were and are published on Internet sites, including Amazon.com, and on television.  Defendant touts the hoses to have a "DURABLE OUTER SHELL" and "exclusive . . . outer casing" that "won't snag, tear, or wear."[8]  Defendant also touts that the hose "Grows to 25, 50 75 or 100 Feet!"  *Id.* ¶ 27.

Proper testing of the Silver Bullet Hoses by Defendant would have revealed the hoses are not durable and do indeed tear. *Id.* ¶ 28.  Silver Bullet Hoses do not conform to Defendant's numerous misrepresentations. *Id.* ¶ 29.

## C.   Defendant's Knowledge of and Notice of the Defects.

Since at least 2009, Defendant has been aware of the Silver Bullet Hose defects.  *Id.* ¶ 30.

At minimum, three class action lawsuits were filed against Telebrands

---

[6] https://mypockethosesilverBullet.com/?ref=mypockethosesilverBullet.com (last accessed September 30, 2021).
[7] https://mypockethosesilverBullet.com/?ref=mypockethosesilverBullet.com (last accessed September 30, 2021).
[8] https://www.amazon.com/Pocket-Hose-Original-Silver-BulbHead/dp/B07JCD8TG7; *see also* https://mypockethosesilverBullet.com/?ref=mypockethosesilverBullet.com (both last accessed September 30, 2021).

concerning the Silver Bullet Hose defects and leaks, similar in nature to the claims alleged here. *See Alex Arreguin Jr. v. Telebrands*, Case No. CIVRS1307798, Sup. Ct. of Cal. (San Bernadino County) (complaint filed on November 6, 2009, and 2014 Settlement Agreement and Release,[9] page 4, states allegations concerning "false and misleading statements in its labeling and advertising of the Covered Products, including that the product was defective, and that they suffered injury as a result of those alleged statements"); *Inocencio v. Telebrands Corp*., L-4378-16, Sup. Ct. of N.J. (Bergen County) (amended complaint filed on August 31, 2016, and 2016 Settlement Agreement and Release,[10] page 1, states allegations concerning "false and misleading claims about the durability, construction, and suitability of the Pocket Hose products as garden hoses"); *Klemballa v. Telebrands Corp.,* 14-cv-01245 (D.N.J.) (complaint filed in 2014).  Complaint ¶ 31.

In addition, consumers have made detailed online complaints about the Silver Bullet Hose. These complaints include dates, details about the defect and negative reactions to how Defendant handled them. All of this information put Defendant on notice concerning the Silver Bullet Hoses' defects. One purchaser summed up the Silver Bullet as "basically a balloon in a sock." A sampling of these online complaints is set forth in paragraph 32a. through w. of the Complaint.

Defendant knowingly and intentionally concealed that Silver Bullet Hoses fail and leak when promoting the product on their website and in advertisements. *Id.* ¶ 33.  Defendant has ignored customers' complaints and concerns and has failed to implement any changes to the Silver Bullet Hose to remedy the product

---

[9] https://www.truthinadvertising.org/wp-content/uploads/2014/04/Arreguin-v.-Telebrands-settlement-agreement-.pdf (last accessed September 30, 2021).

[10] https://www.truthinadvertising.org/wp-content/uploads/2016/12/Stipulation-of-Settlement.pdf (last accessed September 30, 2021).

1  defects. *Id.* ¶ 34.

2  **D.    Telebrands' Actions Have Injured Plaintiff and the Class.**

3      Telebrands knew and failed to disclose that the Silver Bullet Hose is not

4  properly designed, tested, or developed to withstand normal use, failing even

5  within the warranty period.  The Silver Bullet Hose reached the consuming

6  public, including Plaintiff, without substantial correction of its defect and without

7  warning of the latent defect alleged here. *Id.* ¶ 35.

8      Telebrands continues to advertise and sell the Silver Bullet Hose, without

9  disclosing to Plaintiff and members of the Classes, that the Silver Bullet Hose is

10  defectively formulated and designed.  This information would be material to a

11  reasonable consumer in deciding whether to purchase the product, and Defendant

12  had a duty to disclose these facts.  *Id.* ¶ 36.

13      Telebrands did not provide warnings with the Silver Bullet Hose or

14  otherwise warn consumers of the problems Defendant knew existed.  Rash Decl. ¶

15  10.  To this day, Defendant has concealed its knowledge of the Silver Bullet Hose

16  defects from the public.  Furthermore, to this day, Defendant has not issued a

17  recall. Complaint, ¶ 37.  The Silver Bullet Hose, which fails after a few uses, does

18  not perform in accordance with the reasonable expectations of Plaintiff and

19  members of the Classes. Complaint, ¶ 38; Rash Decl. ¶ 11.

20      Had Defendant disclosed the truth about the inadequate design, reliability

21  and performance of the Silver Bullet Hose, Plaintiff and members of the Classes

22  would not have purchased the Silver Bullet™ Hose. Complaint, ¶ 39; Rash Decl.

23  ¶ 12.

24      Because the defects in the Silver Bullet Hose are latent and not detectable

25  until manifestation, Plaintiff and the members of the Classes were not reasonably

26  able to discover Silver Bullet Hoses were defective, even with the exercise of due

27  diligence. Complaint, ¶ 40.

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION          NO. 5:21-cv-00998-JWH-SP

As a result of Defendant's misconduct, Plaintiff and members of the Classes have suffered actual damages and will continue to do and require Plaintiff and members of the Classes to expend money to repair or replace their Silver Bullet Hoses.  Complaint, ¶ 41; Rash Decl. ¶ 9.

The damages suffered by Plaintiff and members of the Classes were not foreseeable from the perspective of Plaintiff and the Class, and Defendant did not warn Plaintiff and the Class that the Silver Bullet Hoses would fail. Complaint, ¶ 42; Rash Decl. ¶ 4.

It is unlikely that most members of the Classes could afford to seek recovery against Defendant on their own. A class action is therefore the only viable, economical, and rational means for members of the Classes to recover from Defendant for the damages Defendant has caused.

## IV.   CLASS CERTIFICATION SHOULD BE GRANTED

Plaintiff request certification of one class consisting of individuals in the State of California who purchased the Silver Bullet Hose. As discussed below, each of the proposed classes satisfies the requirements of Rule 23(a) and (b)(3). The Rule 23(a) requirements are satisfied.

**A.    The Rule 23(a) requirements are satisfied.**

1.    <u>The classes are so numerous that joinder is impracticable. Rule 23 (a)(1).</u>

Generally, a class with forty or more members satisfies numerosity. *Rannis v. Recchia*, 380 Fed. App'x 646, 651 (9th Cir. 2010). The Silver Bullet Hose is sold to California residents via numerous major retail outlets, including Amazon, Home Depot, and Walmart. On Amazon alone, there are thousands of reviews

posted for the Silver Bullet Hose posted by purchasers.[11] Similarly, on HomeDepot.com there are nearly 4,000 purchaser reviews of the Silver Bullet Hose.[12] Given these thousands of reviews, which likely only represent a small fraction of purchasers, it is reasonable to infer that the Class well-exceeds 40 members and certainly reaches well into the thousands. The class therefore satisfies the numerosity requirement.

> 2.  There are issues of law and fact common to all class members. Rule 23 (a)(2).

The commonality requirement has "'been construed permissively' and '[a]ll questions of fact and law need not be common to satisfy the rule.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (alteration in original) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)); *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) ("common" does not mean "complete congruence"). Commonality is thus satisfied where the claims of all class members "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). This is true even where "a single common question" exists. *Id.* at 349-50.

This case presents several common questions, including: (1) whether the Silver Bullet Hose is defective; (2) whether Telebrands knew about the alleged defect; (3) whether Telebrands failed to disclose the alleged defect; and

---

[11] *See* https://www.amazon.com/Pocket-Hose-Original-Silver-BulbHead/dp/B07JCD8TG7 (last visited September 27, 2021); https://www.amazon.com/Pocket-Hose-Original-Silver-BulbHead/dp/B07JQZWJJS (last visited September 27, 2021).

[12] *See* https://www.homedepot.com/p/Pocket-Hose-Silver-Bullet-3-4-in-Dia-x-50-ft-Standard-Duty-Expandable-Water-Hose-13397-6/306703479 (last visited September 27, 2021).

(4) whether Telebrands' conduct violated California consumer protection and laws and common law. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010) (identifying similar common questions); Complaint ¶ 53.

> 3. <u>Plaintiff's claims are typical of class members' claims. Rule 23 (a)(3).</u>

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin*, 617 F.3d at 1175 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Typicality exists when the class representatives and class members are subjected to and injured by the same course of conduct. *Ellis*, 657 F.3d at 984. "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id*. (quoting Hanon, 976 F.2d at 508). Therefore, "[l]ike the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez*, 591 F.3d at 1124 (quoting *Hanlon* 150 F.3d at 1020).

Plaintiff's claims are typical of the claims of all proposed class members because they were subjected to the same deceptive conduct by Telebrands: failure to disclose the common defect in the Silver Bullet Hose. Plaintiff and class members are pursuing the same legal theories and have all been injured by Telebrands' conduct because of the undisclosed defect in the Silver Bullet Hoses they purchased.

> 4. <u>Plaintiff will adequately represent the classes. Rule 23 (a)(4).</u>

The adequacy requirement is satisfied when the class representatives will "fairly and adequately protect the interests of the class." To make this

determination, "courts must resolve two questions: '(1) do the named Plaintiff and their counsel have any conflicts of interest with other class members and (2) will the named Plaintiff and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Id*. In considering the adequacy of Plaintiff' counsel, the court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class."

Fed. R. Civ. P. 23(g)(1)(A).

Plaintiff has already shown that he will vigorously pursue these claims on behalf of class members. Rash Decl., ¶ 1, Declaration of Michael F. Ram ("Ram Decl."), ¶ 4. Because he has experienced the same defect in his Silver Bullet Hose as all class members, Plaintiff has no conflicts with other members of the classes. Plaintiff has retained counsel with substantial experience litigating lawsuits like this one. Ram Decl. ¶ 3. Plaintiffs' counsel have devoted a significant amount of time to this case and will continue to commit the resources necessary to represent the class. *Id*. ¶¶ 2-3. Plaintiff and his counsel have demonstrated their commitment to prosecuting this case on behalf of all class members.

**B.** **The Rule 23(b)(3) requirements are satisfied.**

Class certification is appropriate under Rule 23(b)(3) when "questions of law or fact common to the members of the class predominate over any question

1   affecting only individual members, and . . . a class action is superior to other

2   available methods for the fair and efficient adjudication of the controversy." Fed.

3   R. Civ. P. 23(b)(3). Both requirements are satisfied.

4       1.   Common issues predominate over any individual issues.

5       The predominance requirement "tests whether proposed classes are

6   sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.,*

7   *Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). Predominance is satisfied when

8   "the common, aggregation-enabling issues in the case are more prevalent or

9   important than the non-common, aggregation-defeating, individual issues." *Tyson*

10  *Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). "[A]

11  common question is one where 'the same evidence will suffice for each member

12  to make a prima facie showing [or] the issue is susceptible to generalized, class-

13  wide proof." *Id*. (citation omitted). A plaintiff does not need to "prove that each

14  'element of her claim is susceptible to classwide proof.'" *Amgen, Inc. v. Conn.*

15  *Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013) (citation and alterations

16  omitted). Rather, "[w]hen common questions present a significant aspect of the

17  case and they can be resolved for all members of the class in a single

18  adjudication, there is clear justification for handling the dispute on a

19  representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022

20  (citation omitted).

21      This case presents significant common questions. Plaintiff alleges that he

22  and all class members purchased Silver Bullet Hoses with a common undisclosed

23  defect. *See Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013)

24  (certification was appropriate where "[t]here is a single, central, common issue of

25  liability: whether the Sears washing machine was defective"); Order at 19, *Wilson*

26  *v. Metals USA, Inc.*, No. 2:12-cv-005680-KJM-CJD (E.D. Cal. July 5, 2016),

27  ECF No. 93 ("Whether the tiles were in fact UV-resistant therefore appears a

common question of law and fact apt for resolution by class action"). Trial will focus primarily on Telebrands' conduct and will consist of substantial common evidence, including documents, testimony, and expert analysis relating to the existence of the defect and Telebrands' knowledge and concealment of the defect. Plaintiff asserts claims under the consumer protection statutes of California and the common law of implied warranty and unjust enrichment.

As discussed below, the elements of these claims present predominantly common issues. *See Erica P. John Fund, Inc. v. Halliburton*, 131 S. Ct. 2179, 2184 (2011) ("Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying action."). Although there are inevitably some individual issues, as is always the case in class actions, certification is still appropriate given the predominantly common issues to be resolved for the class. Any remaining individualized issues can be effectively managed using well-established procedural tools. As the Supreme Court explained, "[w]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or affirmative defenses peculiar to some individual class members." *Tyson Foods*, 136 S. Ct. at 1045 (citation omitted); *see also Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) (noting "the variety of procedural tools courts can use to manage the administrative burdens of class litigation.").

### a.   Common issues predominate with respect to the CLRA and UCL.

The California Consumers Legal Remedies Act (CLRA) prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770(a). The statute provides relief to "any consumer who suffers any damages

as a result of the use or employment" of any unlawful "method, act, or practice declared to be unlawful by [the CLRA]." § 1780(a). A plaintiff pursuing a CLRA claim must "show not only that the defendant's conduct was deceptive but that the deception caused them harm." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009). Whether Telebrands' conduct was deceptive is an issue common to all class members. An omission is actionable under the CLRA "when the omission is contrary to a representation actually made by the defendant or where a duty to disclose exists." *Gold v. Lumber Liquidators, Inc*., No. 3:14-cv-05373-TEH, 2015 WL 7888906, at *7 (N.D. Cal. Nov. 30, 2015) (citation omitted). A duty to disclose exists when a defendant "has exclusive knowledge of material facts not known to the plaintiff." *Norcia v. Samsung Telecomm. Am., LLC*, No. 14-cv-00582-JD, 2015 WL 4967247, at *6 (N.D. Cal. Aug. 20, 2015) (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)).

Plaintiff will use common evidence to prove that Telebrands exclusively knew and did not disclose that its hoses are not fit for their intended purpose, and that this omission was contrary to its representations that the Silver Bullet Hose has a "DURABLE OUTER SHELL," that the outer casing "won't snag, tear, or wear," that the hose is "Super Durable," and "the ONLY Hose You'll Ever Need." Complaint ¶¶3-5. Plaintiff will show via common evidence that information about the existence of the defect was solely within Telebrands' control and that Plaintiff and the Class could not have had access to that information at the time they purchased a Silver Bullet Hose. Whether Defendant made uniform omissions from the Silver Bullet Hoses, and whether those omissions are material and likely to deceive a reasonable consumer, are key to both the CLRA and UCL claims, and can be determined classwide.

Plaintiff will also use common evidence to prove causation, which may be established on a classwide basis by proving the materiality of the represented or

omitted information. *McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174, 183-84 (2010). An omission is material "if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2010) (citation omitted). As the Court has recognized, "It seems difficult to argue that a reasonable consumer would not find the alleged misrepresentations and omissions to be important to the purchasing decision at issue." *Gold*, 2015 WL 7888906, at *9; *see also Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 531 (C.D. Cal. June 12, 2012) (Plaintiff could show an omission was material by demonstrating that the alleged defect was likely to manifest in premature tire wear in class members' vehicles). Materiality is evaluated using an objective, reasonable person standard, and will turn on common evidence. *Edwards v. Ford Motor Co.*, 603 Fed. App'x 538, 541 (9th Cir. 2015).

The California Unfair Competition Law (UCL) prohibits unlawful, unfair and fraudulent business practices. Cal. Bus. & Prof. Code § 17200.[13] Plaintiff contend that Telebrands violated the unlawful and unfair prongs of the UCL. Plaintiff' claim under the unlawful prong of the UCL is based on the CLRA claim and will be proven with the same common evidence. Plaintiff can show that Telebrands' conduct was unfair by proving that "the utility of the defendant's conduct" outweighs "the gravity of the harm" to class members, which will require examining the impact on class members "balanced against the reasons, justification, and motives" of *Telebrands. Perryman v. Litton Loan Serv., LP*, 81 F. Supp. 3d 893, 899 (N.D. Cal. 2015) (citations omitted). This balancing test focuses on Telebrands' conduct and therefore raises common issues. *See Gaudin*

---

[13] Because the UCL protects all purchasers, not just consumers, a class certified with respect to this claim should not be restricted to individuals who purchased the hoses for personal, family, or household use. Cal. Bus. & Prof. Code §§ 17201 & 17204.

1    *v. Saxon Mortg. Serv., Inc.*, 297 F.R.D. 417, 430 (N.D. Cal. 2013).

2        Plaintiff will not have to present "individualized proof of deception,

3    reliance and injury" to prove their UCL claim. *Pulaski & Middleman, LLC v.*

4    *Google, Inc.*, 802 F.3d 979, 986 (9th Cir. 2015) (*quoting In re Tobacco II Cases*,

5    46 Cal. 4th 298, 320 (2009)). Plaintiff need only "show that members of the

6    public are likely to be deceived" by Telebrands' conduct. *Id.* at 985-86 ("[I]n

7    effect, California has created what amounts to a conclusive presumption that

8    when a defendant puts out tainted bait and a person sees it and bites, the

9    defendant has caused an injury."). As with the CLRA, Plaintiff can prove reliance

10   by demonstrating the materiality of Telebrands' omission. *Gold*, 2015 WL

11   7888906, (citing *Tobacco*, 46 Cal. 4th at 326-27). Materiality under the UCL "is

12   an objective standard that is susceptible to common proof." *Wolph v. Acer Am.*

13   *Corp.*, 272 F.R.D. 477, 488 (N.D. Cal. 2011).

14        Plaintiff seeks classwide restitution and injunctive relief for the California

15   class. Cal. Bus. & Prof. Code § 17203; Cal. Civ. Code § 1780; *see also Colgan v.*

16   *Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 694 (2006) ("There is

17   nothing to suggest that the restitution remedy provided under the CLRA should

18   be treated differently than the restitution remedies provided under the False

19   Advertising or Unfair Competition Laws."). Plaintiff contends that class members

20   are entitled to restitution of the full purchase price because all of the hoses suffer

21   from the concealed defect that renders the product useless for its intended

22   purpose. *See Pulaski*, 802 F.3d at 989 ("restitution is based on what a purchaser

23   would have paid at the time of purchase had the purchaser received all the

24   information"); *In re Morning Song Bird Food Litig.*, 320F.R.D. 540, 556 (S.D.

25   Cal. 2017) (approving a full refund class damages model because it was

26   consistent with the plaintiff's theory of liability and could be measured on a class-

27   wide basis, thus satisfying *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)); *see*

*also In re Tobacco Cases II,* 240 Cal. App. 4th 779, 795, 192 Cal. Rptr. 3d 881, 895 (2015) ("A full refund may be available in a UCL case when the plaintiffs prove the product had no value to them.").  Class members' entitlement to restitution is a common issue. *Id*. at 986 ("[A] court need not make individual determinations regarding entitlement to restitution" because "restitution is available on a classwide basis once the class representative makes the threshold showing of liability under the UCL.").   Plaintiff also seek actual injunctive relief under the CLRA and the UCL. Cal. Civ. Code § 1782(d).  This request is common with respect to the entire class.

**b.     Common issues predominate with respect to implied warranty and unjust enrichment.**

Common issues also predominate with respect to the implied warranty claims. An implied warranty of merchantability guarantees that goods "(1) Pass without objection in the trade under the contract description; (2) Are fit for the ordinary purposes for which such goods are used; (3) Are adequately contained, packaged, and labeled; [and] (4) Conform to the promises or affirmations of fact made on the container or label.'" Cal. Civ. Code §1791.1(a). Whether a product is fit for its ordinary purpose "focuses on the expectations for the performance of the product when used in the customary, usual[,] and reasonably foreseeable manners." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 485 (C.D. Cal. 2012). None of these elements raise any individual issues. Classwide evidence will show that the Silver Bullet Hose defect is common to all products sold to the Class and that the defect makes the product unfit for its ordinary purpose as a hose. This is sufficient to satisfy commonality of this claim for class certification purposes. *See Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 537 (C.D. Cal. 2012). ("If plaintiffs, on the other hand, can demonstrate that the specification is substantially certain to result in premature and excessive tire wear that renders the

vehicles unfit for driving, they will prevail. The breach of implied warranty claim is therefore susceptible of common proof, and the court will certify the implied warranty claim for class treatment.").

Finally, common issues predominate with respect to unjust enrichment. For this claim, common evidence will show that Defendant's failure to disclose the known defect in the Silver Bullet Hose induced Plaintiff and the Class to purchase the product, thus unjustly enriching Defendant. *See Keilholtz v. Lennox Hearth Prod. Inc.*, 268 F.R.D. 330, 343 (N.D. Cal. 2010). ("Plaintiffs sufficiently show that common factual issues predominate as to [unjust enrichment]. The common question of whether Defendants' alleged failure to warn . . . induced Plaintiffs and unnamed class members to buy homes with those fireplaces installed therein predominates over any questions affecting only individual members."); *see also Westway World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 224 (C.D. Cal. 2003) (certifying nation-wide class of unjust enrichment claimants)

### 2.   Class certification is superior to individual actions.

The purpose of the superiority requirement is to ensure judicial economy and that a class action is the "most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175 (citation omitted). Courts consider four factors in evaluating the superiority requirement:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). All of these factors support class certification. The high cost of pursuing claims against Defendant on an individual basis, including expert

and testing expenses, outweighs the potential recovery for class members. *See Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). It is also "far more efficient" to litigate Plaintiff' claims based on a common defect "on a classwide basis rather than in thousands of individual and overlapping suits." *Id*. at 1176; *see also Bibo v. Fed. Express, Inc.*, No. C 07-2505 TEH, 2009 WL 1068880, at *9 (N.D. Cal. Apr. 21, 2009) ("avoiding repetitious suits before the courts of this state is a valid factor weighing toward class treatment of the claims"). Because of  the large number of class members, the high cost of individual proof, and the common issues at the heart of the claims, and the need for injunctive relief, the class action device is the superior method for adjudicating these claims.

## V.   CONCLUSION

Plaintiff respectfully request that the Court enter an order certifying the proposed Class, appointing Plaintiff to serve as class representatives, appointing the undersigned to serve as class counsel, and directing Plaintiff to submit a proposed notice plan and form of notice within a reasonable time following entry of this order.

RESPECTFULLY SUBMITTED AND DATED this 8th day of October, 2021.

By:     /s/ Michael F. Ram
        Michael F. Ram

        Michael F. Ram (SBN 104805)
        mram@forthepeople.com
        Marie N. Appel (SBN 187483)
        mappel@forthepeople.com
        MORGAN & MORGAN
        COMPLEX LITIGATION GROUP
        711 Van Ness Avenue, Suite 500

San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923
Jeffrey B. Cereghino (SBN 99480)
jbc@cereghinolaw.com
CEREGHINO LAW GROUP LLP
649 Mission Street, Floor 5
San Francisco, CA 94105
Telephone: (415) 433-4949

Samuel J. Strauss
(To be admitted Pro Hac Vice)
sam@turkestrauss.com
TURKE STRAUSS, LLP
613 Williamson Street, Suite 100
Madison, WI 53703
Telephone: (608) 237-1775

Gretchen M. Nelson (SBN 112566)
gnelson@nflawfirm.com
Gabriel S. Barenfeld (SBN 224146)
gbarenfeld@nflawfirm.com
NELSON & FRAENKEL LLP
601 S. Figueroa Street., Suite 2050
Los Angeles, California, 90017
Telephone: (213) 622-6469
Facsimile: (213) 622-6019

Charles J. LaDuca
(To be admitted Pro Hac Vice)
charles@cuneolaw.com
Brendan Thompson
(To be admitted Pro Hac Vice)
brendant@cuneolaw.com
CUNEO GILBERT & LaDUCA, LLP
4725 Wisconsin Avenue, NW
Suite 200
Washington, DC 200016
Telephone:  (202) 789-3960

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION          NO. 5:21-cv-00998-JWH-SP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27